**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| B.E. TECHNOLOGY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 2:12-cv-02772-JPM-tmp |
| | ) | |
| LINKEDIN CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE**

Before the Court is Defendant LinkedIn Corporation's ("Defendant" or "LinkedIn") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and for Expedited Consideration, filed January 3, 2013.  (ECF No. 21.)  For the reasons that follow, the Motion is DENIED.

**I.  BACKGROUND**

This case concerns Defendant LinkedIn's alleged infringement of United States Patent No. 6,628,314 (the "'314 patent").  (ECF No. 1.)  Plaintiff B.E. Technology, LLC ("Plaintiff or "B.E."), is the assignee of the '314 patent (ECF No. 30 at 2), currently owning "all right, title, and interest in the '314 patent, and has owned all right, title, and interest throughout the period" of the alleged infringement (ECF No. 1 ¶ 10).

B.E. alleges that LinkedIn infringed the '314 patent "by using a method of providing demographically targeted advertising that directly infringes at least Claim 11 of the '314 patent either literally or under the doctrine of equivalents." (Id. ¶ 11.)

B.E. filed a Complaint in this Court on September 7, 2012. (ECF No. 1.) LinkedIn filed its Answer on December 31, 2012 (ECF No. 19) and its Motion to Transfer Venue on January 3, 2013 (ECF No. 21). B.E. filed its Response in Opposition to Defendant's Motion to Transfer Venue on January 22, 2013. (ECF No. 30.) With leave of Court, LinkedIn filed a Reply Memorandum in Support of Its Motion to Transfer on February 1, 2013. (ECF No. 36.) On February 11, 2013, LinkedIn filed a Motion to Stay pending resolution of its Motion to Transfer Venue. (ECF No. 37.) The Court granted LinkedIn's Motion to Stay on February 12, 2013. (ECF No. 38.)

LinkedIn seeks to transfer this case to the Northern District of California, where its headquarters are located. (ECF No. 21-1 at 1.) To support its Motion, LinkedIn contends that all products and services of which it is alleged to have infringed were developed and have been operated from the Northern District of California. (Id.) LinkedIn states that its "employees, including engineering and financial personnel," and its "relevant technical documents and computer source code

are located in the Northern District of California." (Id. at 1;
see also id. at 4-5.)  Further, LinkedIn asserts that a majority
of third-party witnesses on whom it intends to rely are also
located in the Northern District of California.  (Id. at 5.)

B.E. opposes LinkedIn's Motion to Transfer.  B.E. is a
limited-liability company incorporated in Delaware.  (ECF No. 1
¶ 2.)  B.E. was originally registered in Michigan, but formally
registered to conduct business in Tennessee in September 2012.
(ECF No. 30 at 2.)  B.E. contends that Memphis, Tennessee, is
its principal place of business.  (ECF No. 1 ¶ 2.)  Martin David
Hoyle ("Hoyle"), B.E.'s founder and CEO, is the named-inventor
of the '314 patent.  (ECF No. 30 at 1, 2.)  Hoyle has been a
resident of Tennessee since April 2006.  (Id. at 1, 2.)

B.E. argues that transfer is inappropriate because it has
substantial connections with this district.  B.E. argues that
Hoyle has been present in the Western District of Tennessee
since 2006, and B.E. "since at least 2008," and that this
district is B.E.'s principal place of business.  (Id. at 5.)
B.E. also argues that none of its witnesses are located in the
Northern District of California.  (Id. at 7.)  Further, B.E.
argues that its corporate documents, including documents
relating to the "conception and reduction to practice" of the
patent-in-suit, are located in this District.  (Id. at 6.)

## II. STANDARD

LinkedIn moves the Court to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a). (ECF No. 21-1 at 1.) The statute provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." Reese v. CNH Am. LLC, 574 F.3d 315, 320 (6th Cir. 2009).

In determining whether to transfer a case under § 1404(a), the court must first determine whether the claim could have been brought in the transferee district. 28 U.S.C. § 1404(a) (allowing transfer to any other district in which the claim "might have been brought"). Once the court has made this threshold determination, the court must then determine whether party and witness "convenience" and "the interest of justice" favor transfer to the proposed transferee district. Reese, 574 F.3d at 320; Esperson v. Trugreen Ltd., No. 2:10-cv-02130-STA-cgc, 2010 WL 4362794, at *5 (W.D. Tenn. Oct. 5, 2010), adopted 2010 WL 4337823 (W.D. Tenn. Oct. 27, 2010). In weighing these statutory factors, the court may still consider the private- and

4

public-interest factors set forth in the pre-Section 1404(a) case, Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1947), but courts are not burdened with "preconceived limitations derived from the forum non conveniens doctrine." Norwood v. Kirkpatrick, 349 U.S. 29, 31 (1955) (quoting All States Freight v. Modarelli, 196 F.2d 1010, 1011 (3d Cir. 1952)) (internal quotation marks omitted); Esperson, 2010 WL 4362794, at *5. The United States Court of Appeals for the Sixth Circuit has stated that when deciding "a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" Moore v. Rohm & Haas Co., 446 F.3d 643, 647 n.1 (6th Cir. 2006).

Additionally, the "interest of justice" factor has been interpreted broadly by courts, influenced by the individualized circumstances of each case. The United States Court of Appeals for the Federal Circuit has set forth a non-exhaustive list of pertinent public-interest factors:

> The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law.

5

In re Acer Am. Corp., 626 F.3d 1252, 1254 (Fed. Cir. 2010); see also In re Nintendo Co., Ltd., 589 F.3d 1194, 1198 (Fed. Cir. 2009) (finding the local-interest factor weighed heavily in favor of transfer); Cincinnati Ins. Co. v. O'Leary Paint Co., 676 F. Supp. 2d 623, 633 (W.D. Mich. 2009) (considering additional factors such as the relative docket congestion of each district).

Initially, B.E. argues that there is a strong presumption in favor of its choice of forum, and that its choice of forum should not be disturbed unless the defendant carries its burden to demonstrate that the balance of convenience strongly favors transfer. (ECF No. 30 at 4-6.) B.E.'s argument is erroneously derived from the more stringent forum-non-conveniens standard. Compare Hunter Fan Co. v. Minka Lighting, Inc., No. 06–2108 M1/P, 2006 WL 1627746 (W.D. Tenn. June 12, 2006) (applying the appropriate private- and public-interest factors but relying on the forum-non-conveniens doctrine to accord strong deference to the plaintiff's choice of forum), with OneStockDuq Holdings, LLC v. Becton, Dickinson, & Co., No. 2:12-cv-03037–JPM-tmp, 2013 WL 1136726, at *3 (W.D. Tenn. Mar. 18, 2013), and Roberts Metals, Inc. v. Florida Props. Mktg. Grp., Inc., 138 F.R.D. 89, 92-93 (N.D. Ohio 1991) (recognizing defendants need to make a lesser showing to overcome plaintiff's choice of forum under § 1404(a)), aff'd per curiam, 22 F.3d 1104 (6th Cir. 1994).

Although there is a strong presumption in favor of the plaintiff's choice of forum under the doctrine of forum non conveniens, under § 1404(a), a plaintiff's choice of forum may be considered, but is entitled to less deference. Discussing the difference between the common-law doctrine of forum non conveniens and the federal transfer-of-venue statute in Norwood, the Supreme Court stated,

> When Congress adopted § 1404(a), it intended to do more than just codify the existing law on forum non conveniens. . . . [W]e believe that Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.

Norwood, 349 U.S. at 32; see also Lemon v. Druffel, 253 F.2d 680, 685 (6th Cir. 1958) ("The choice of the forum by the petitioner is no longer as dominant a factor as it was prior to the ruling in Norwood v. Kirkpatrick[.]"); Esperson, 2010 WL 4362794, at *5-6.

LinkedIn's burden under § 1404(a) is to demonstrate that a change of venue to the transferee district is warranted. See Eaton v. Meathe, No. 1:11-cv-178, 2011 WL 1898238, at *2 (W.D. Mich. May 18, 2011); Amphion, Inc. v. Buckeye Elec. Co., 285 F. Supp. 2d 943, 946 (E.D. Mich. 2003); Roberts Metals, Inc., 138 F.R.D. at 93. "Merely shifting the inconvenience from one party

7

to another does not meet Defendant's burden." <u>McFadgon v. Fresh</u>
<u>Mkt., Inc.</u>, No. 05-2151-D/V, 2005 WL 3879037, at *2 (W.D. Tenn.
Oct. 21, 2005). "[T]he movant must show that the forum to which
he desires to transfer the litigation is the <u>more convenient one</u>
<u>vis a vis</u> the Plaintiff's initial choice." <u>Roberts Metals,</u>
<u>Inc.</u>, 138 F.R.D. at 93 (quoting <u>Mead Corp. v. Oscar J. Boldt</u>
<u>Constr. Co.</u>, 508 F. Supp. 193, 198 (S.D. Ohio 1981)) (internal
quotation marks omitted). If the court determines that the
"balance between the plaintiff's choice of forum and defendant's
desired forum is even, the plaintiff's choice of [forum] should
prevail." <u>Stewart v. Am. Eagle Airlines, Inc.</u>, No. 3:10-00494,
2010 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010).

## III. ANALYSIS

LinkedIn asserts that B.E. could have brought this action
in the Northern District of California. (<u>See</u> ECF No. 21-1 at
7.) B.E. does not dispute this assertion. (<u>See</u> ECF No. 30 at
4.) The Court agrees with the parties that B.E. could have
brought suit in the Northern District of California as personal
jurisdiction over LinkedIn exists in that District. Therefore,
the only issue remaining is whether the balance of the statutory
factors — the convenience to the witnesses, the convenience to
the parties, and the interest of justice — favors transfer to
the Northern District of California. The Court will address
each statutory factor separately and balance these factors to

determine whether transfer to the Northern District of California is proper pursuant to § 1404(a).

### A. Convenience of the Witnesses

When asserting that a transferee district is more convenient for witnesses, a party "must produce evidence regarding the precise details of the inconvenience" of the forum chosen by the plaintiff. Esperson, 2010 WL 4362794, at *8. To satisfy its burden, the movant must do "more than simply assert[] that another forum would be more appropriate for the witnesses; he must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district." Id. (quoting Roberts Metals, Inc., 138 F.R.D. at 93). Further, "[t]o sustain a finding on [this factor] . . . the party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable a court to assess the materiality of evidence and the degree of inconvenience." Eaton, 2011 WL 1898238, at *3 (quoting Rinks v. Hocking, 1:10-CV-1102, 2011 WL 691242, at *3 (W.D. Mich. Feb. 16, 2011)) (internal quotation marks omitted). It is the "materiality and importance of the testimony of prospective witnesses, and not merely the number of witnesses," that is crucial to this inquiry. Rinks, 2011 WL 691242, at *3.

LinkedIn contends that witness convenience favors transfer to the Northern District of California. (ECF No. 21 at 9-11; ECF No. 36 at 5-7.) To support this contention, LinkedIn asserts that all of the witnesses on which it intends to rely are located in the transferee district. These witnesses include "employees, including engineering and financial personnel," and numerous non-party prior-art witnesses. (ECF No. 21-1 at 1, 5; ECF No. 36 at 5-6.)

In response, B.E. argues that transfer to the Northern District of California would be equally disruptive to its business and inconvenient to B.E.'s witnesses, "none of whom is located in the Northern District of California." (ECF No. 30 at 7.) B.E. identifies Hoyle, the named-inventor of the patent-in-suit and founder and CEO of B.E., as its key witness who is located in the Western District of Tennessee. (Id. at 5-6.)

Because the convenience of party and non-party witnesses is given different weight, the Court will analyze the witnesses separately. See Azarm v. $1.00 Stores Servs., Inc., No. 3:08-1220, 2009 WL 1588668, at *4 (M.D. Tenn. June 5, 2009) ("[T]he convenience of potential non-party witnesses, who are not subject to the control of the parties, is a particularly weighty consideration, because it is generally presumed that party witnesses will appear voluntarily in either jurisdiction, but

non-party witnesses, with no vested stake in the litigation, may not.").

### 1. Party Witnesses

LinkedIn asserts that "all of [its] potentially relevant witnesses . . . are located in the Northern District of California." (ECF No. 21-1 at 5.) In its Reply, LinkedIn argues that it need not identify these potential witnesses by name "[b]ecause all of LinkedIn's potential witnesses reside in the Northern District of California, and the topics of their testimony are not in doubt." (ECF No. 36 at 6.) LinkedIn provided the Court with the Declaration of Ashvin Kannan, its Director of Engineering, which states, "Engineers who may have knowledge regarding any advertising features on LinkedIn's website and any technology that supports those features work in the Mountain View[, California,] headquarters." (Kannan Decl., ECF No. 21-2, ¶ 7.)

LinkedIn does not provide any evidence showing that any employees will be unwilling to testify in this district if asked to do so, but notes generally that the potential employee-witnesses will be inconvenienced due to "multi-leg flights to Tennessee to testify at trial, likely involving overnight stays away from family and work." (ECF No. 36 at. 6-7.) See Esperson, 2010 WL 4362794, at *8. LinkedIn states that its engineers are "important" to its business and therefore their

"absence for significant periods of time would adversely affect operations." (ECF No. 21-1 at 10.) Courts have noted that "normally a corporation is able to make its employees available to testify when needed." Clark v. Dollar Gen. Corp., No. 3-00-0729, 2001 U.S. Dist. LEXIS 25975, at *9 (M.D. Tenn. Mar. 6, 2001); see also Zimmer Enters. v. Atlandia Imps., Inc., 478 F. Supp. 2d 983, 991 (S.D. Ohio Mar. 14, 2007) (finding that the convenience of witnesses who are employees "will not ordinarily be considered, or at least, that the convenience of such employees will not generally be given the same consideration as is given to other witnesses"). Accordingly, it appears that LinkedIn's employees will be able to attend absent any evidence to the contrary.

Therefore, regarding LinkedIn employees, LinkedIn does not satisfy its burden. LinkedIn argues that due to the distance between Memphis and the Northern District of California, approximately 1800 miles, and the lack of direct flights between any of the three major airports in Northern California – San Jose, Oakland, or San Francisco – and Memphis, travel to Memphis would impose a significant inconvenience. (ECF No. 21-1 at 9-10.) Yet, the same is true for B.E.'s witnesses, which B.E. asserts do not reside in the Northern District of California. (ECF No. 30 at 7.) LinkedIn's reliance on Returns Distribution Specialists, LLC v. Playtex Products, Inc., No. 02-1195-T, 2003

12

WL 21244142 (W.D. Tenn. May 28, 2003), for the proposition that this factor "weighs even more heavily in favor of transfer where the witnesses forced to travel are important to the defendant's business and their attendance at trial and other proceedings in a distant forum could disrupt those operations" (ECF No. 21-1 at 10) is misplaced. In Returns Distribution Specialists, the court found that this factor weighed heavily in favor of transfer because the defendant "presented unrefuted evidence that certain witnesses that it expects to call to testify at trial are a 'core group of employees' and that it would be severely disruptive to its business if these employees were all out of town at the same time." Returns Distribution Specialists, 2003 WL 21244142, at *7. In the instant case, the Court agrees that all of LinkedIn's employees are located in the transferee district, and that that their testimony is likely material. Unlike Returns Distribution Specialists, however, LinkedIn has only provided a general statement about the necessity of its engineers to its business and has not indicated how many engineers it would be inclined to call as potential witnesses. Further, LinkedIn's general statement that its operation would "adversely affected" by employee absence for "significant periods of time" does not provide the Court with any indication as to what constitutes either "adverse" effects or a "significant" period of time. As a result, the Court

cannot assess the degree to which LinkedIn's business would be disrupted compared to the disruption B.E. will endure due to its CEO's absence should the case be transferred. Accordingly, the Court finds transfer would only shift the inconvenience to B.E. See McFadgon, 2005 WL 3879037, at *2.

Therefore, because § 1404(a) provides for transfer "to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient," distance of travel for employee witnesses does not weigh in favor of transfer. Hunter Fan, 2006 WL 1627746, at *2 (citing Van Dusen v. Barrack, 376 U.S. 612, 645–46 (1964)).

LinkedIn further argues that because it intends to call employee witnesses located in the transferee district and because B.E. only identified one witness, Hoyle, this factor weighs in favor of transfer. (ECF No. 36 at 6–7.) The Court acknowledges that the testimony of LinkedIn employees is likely material and that these employees are located in the transferee district. While B.E. did not specifically identify any witnesses beyond Hoyle, however, B.E. does not have the burden to do so. Despite B.E. not identifying any individuals beyond Hoyle, LinkedIn's identification of all its engineers with "knowledge regarding any advertising features on LinkedIn's website and any technology that supports those features," and employees with knowledge of its "sales, finance, and marketing

14

operations" as material witnesses does not satisfy its burden on this factor. (Kannan Decl., ECF No. 21-2, ¶¶ 7-8.) A simple numerical advantage is insufficient on the issues raised by a motion to transfer.

Moreover, B.E. argues that "[i]t is likely that LinkedIn's California-based employees will be deposed in California where B.E.'s lead counsel is based." (ECF No. 30 at 10.) This further indicates that the witness-convenience factor does not weigh in favor of transfer. See Hunter Fan, 2006 WL 1627746, at *2 (finding relevant that the plaintiff planned to take depositions of the defendant's witnesses in California in determining that the witness convenience factor did not favor transfer).

### 2. Non-Party Witnesses

While convenience to party witnesses is an important consideration, "it is the convenience of non-party witnesses, rather than employee witnesses . . . that is the more important factor and is accorded greater weight." Steelcase Inc. v. Smart Techs., 336 F. Supp. 2d 714, 721 (W.D. Mich. Mar. 5, 2004) (citation omitted) (internal quotation marks omitted). LinkedIn asserts that, at the time of the filing of its Motion, it had identified "at least twelve prior art patents with clear ties to companies and inventors in the Northern District of California." (ECF No. 21-1 at 12.) LinkedIn states that in order to

"prepare its defenses," it "will need to gather documents and obtain testimony from these individuals and companies in California." (Id. at 12.) LinkedIn further contends that if the case remains in the transferor district, it would "be forced to present critical prior art testimony trough deposition transcript instead of live testimony – which will greatly undercut its ability to put on an effective defense at trial." (Id.) LinkedIn finally asserts that it would be unable to secure the attendance of these potential prior-art witnesses by subpoena if the case remains in the transferor district and that it is "highly doubtful" that these witnesses would be "willing to voluntarily travel across the country to testify at trial in Tennessee." (ECF No. 36 at 8.)

B.E. argues that the convenience of third-party witnesses is not entitled to great weight in the instant case because LinkedIn has not established that the "third party testimony will be material or important." (ECF No. 30 at 10.) B.E. asserts that LinkedIn has not stated the "relevance, materiality, and importance" of the non-party witnesses' testimony. (Id. at 12.) B.E. further argues that prior-art testimony is "almost certain to be severely limited at the time of trial" and, therefore, such testimony does not weigh in favor of transfer. (Id. at 10-11.) Additionally, B.E. contends that LinkedIn has "failed to establish the current locations of any

of the inventors or assignees," and "has not presented any evidence that the inventors and assignees are unwilling to testify in Tennessee or how they would be inconvenienced by testifying here." (Id. at 11.)

The availability of compulsory process for unwilling witnesses is a consideration closely related to the convenience-of-witnesses factor and the costs of procuring the witness, and therefore is an important consideration for the Court. See, e.g., In re Acer, 626 F.3d at 1255; Rinks, 2011 WL 691242, at *4. Whether this factor should be given considerable weight depends on the materiality of the testimony to the resolution of the case. Rinks, 2011 WL 691242, at *4. A federal court in the Northern District of California would be able to compel the prior-art witnesses residing in the that District or within the state of California to testify at trial. See Fed. R. Civ. P. 45(b)(2); Brackett v. Hilton Hotels Corp., 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008) ("The California district courts have the power to subpoena witnesses throughout the state pursuant to [Federal Rule of Civil Procedure] 45(b)(2)(C) . . . ."). In contrast, the prior-art witnesses would not be subject to the subpoena power in this district, see Fed. R. Civ. P 45(c)(3)(A)(ii), but would be available for deposition in the Northern District of California if unwilling to testify in this district. Therefore, the testimony of such witnesses

potentially would "not be live and therefore could be less persuasive." <u>Rinks</u>, 2011 WL 691242, at *4.

The Court finds that LinkedIn has met its burden to show the nature of the prior-art witnesses' testimony, and that the testimony is likely material to LinkedIn's invalidity and non-infringement contentions. LinkedIn, however, has only stated generally that depositions of non-party witnesses would be inadequate and live testimony from non-party witnesses required. To the extent the non-party witnesses' testimony may be presented by deposition, witness inconvenience would not be an issue. LinkedIn states that these prior-art witnesses will be necessary for trial, but recognizes that "likely many more" non-party witnesses will be necessary. (ECF No. 21-1 at 12.) This general statement relating to the number of non-party witnesses, combined with the general statement that without transfer LinkedIn would be forced to present "critical prior art testimony through deposition transcript instead of live testimony" which would "undercut its ability to put on an effective defense at trial," is not sufficient to allow the Court to determine (1) the number of non-party witnesses LinkedIn requires; and (2) whether live testimony of these non-party witnesses is necessary. Further, LinkedIn is only able to estimate that it is "highly doubtful" that any of the non-party witnesses would be unwilling to testify in this District if

asked to do so.  As a result, this factor does weighs only slightly in favor of transfer.

**B.  Convenience of the Parties**

LinkedIn argues that the "connections of this case are much stronger to the Northern District of California than the Western District of Tennessee."  (ECF No. 21-1 at 2.)  While LinkedIn organizes its arguments somewhat differently than the Court, the Court finds the considerations relevant to the convenience-of-the-parties factor are the location of the sources of proof and the parties' financial hardships due to litigation in the chosen forum.

**1.  Location of Sources of Proof**

LinkedIn argues that all of its "relevant documents," "technical documentation and computer source code related to the accused advertising-related technology," and "all information related to [its] U.S. sales, finances, and marketing operations" are maintained in the Northern District of California.  (ECF No. 21-1 at 8.)  LinkedIn contends that B.E. has only produced 222 documents in its initial disclosures relating to the conception and reduction to practice of the '314 Patent, and that "the size of this production belied B.E.'s claim of inconvenience, considering that the bulk of discovery in this case and a significantly greater number of documents are located in California at LinkedIn's offices."  (ECF No. 36 at 4.)  Further,

LinkedIn notes that as these documents have already been produced, there is no ongoing inconvenience to B.E. relating to the sources of proof. (Id.)

B.E. argues that, because its CEO resides in the Western District of Tennessee, its corporate documents and records, "including documents demonstrating the conception and reduction to practice of [the patent-in-suit]," are located in the Western District. (ECF No. 30 at 6, 12.) B.E. notes that while LinkedIn's sources of proof are located in the Northern District of California, B.E.'s own sources of proof are located in Tennessee and have been maintained there for years. (Id. at 12.) B.E. also contends that "the location of relevant documentary evidence is increasingly less important in deciding motions to transfer," and that because documents can be exchanged electronically the weight given this factor should be minimal. (Id. at 13.) B.E. finally argues that this factor does not weigh in favor of transfer because "it can be expected that LinkedIn will eventually produce its documents to B.E.'s lead counsel in California, not to B.E. in Tennessee." (Id.)

As an initial matter, the Court disagrees with B.E.'s contention that advances in electronic document transfer reduce the importance of the location-of-sources-of-proof factor. This notion has been expressly rejected by the Federal Circuit. See, e.g., In re Link_A_Media Devices Corp., 662 F.3d 1221, 1224

(Fed. Cir. 2011) (reversing a district court that did not consider the factor, stating, "While advances in technology may alter the weight given to these factors, it is improper to ignore them entirely"); In re Genentech, Inc., 566 F.3d 1338, 1345-46 (Fed. Cir. 2009) (finding clear error where a district court "minimized the inconvenience of requiring the petitioners to transport their documents by noting that '[t]he notion that the physical location of some relevant documents should play a substantial role in the venue analysis is somewhat antiquated in the era of electronic storage and transmission'" (quoting Sanofi-Aentis Deutschland GmbH v. Genentech, Inc., 607 F. Supp. 2d 769, 777 (E.D. Tex. 2009))).

The Court agrees that it is likely that the sheer volume of documents LinkedIn has in its possession outnumbers the patent-related documents in B.E.'s possession, and that B.E. has already produced documents related to the conception and reduction to practice of the '314 Patent, but the Court disagrees that this is enough to tip the balance in favor of transfer. The Court finds that both parties maintain documents in their respective districts; that both sets of documents will be integral to the proceedings; and that LinkedIn will be expected to serve its documents on B.E.'s counsel in Northern California, not in the Western District of Tennessee. LinkedIn's reliance on In re Acer is misplaced. (See ECF No. 36

at 4.)  In In re Acer, the Federal Circuit found that "no party

identified any likely source of proof" in the transferor

district.  In re Acer, 626 F.3d at 1256.  To the contrary, in

the instant case B.E. has shown that its records – which

include, but are not necessarily limited to, "documents

demonstrating the conception and reduction to practice of" the

'314 Patent – are located in Tennessee.  (See ECF No. 30 at 6,

12.)  Taken together, the aforementioned facts indicate that as

to the location of the sources of proof, the Northern District

of California is a somewhat more convenient venue for the

parties to the instant case.  This factor, however, is not

sufficient, by itself, to require transfer.

### 2.   Financial Hardships Attendant to Litigating in the Chosen Forum

LinkedIn argues that its employee-witnesses with relevant

knowledge to the instant case are all located in the Northern

District of California.  (ECF No. 21-1 at 9.)  As a result,

LinkedIn contends that travel to Tennessee would impose a

significant inconvenience to its witnesses in terms of cost and

the disruption to the witnesses' lives.  (Id. at 9-10.)

Additionally, LinkedIn argues that the absence of its employee-

witnesses from the LinkedIn headquarters in the transferee

district would "adversely affect operations."  (Id. at 10.)

B.E. states that it "would face a financial burden by having to litigate in the Northern District of California." (ECF No. 30 at 14.)  B.E.'s CEO Hoyle states that "B.E. will incur expenses it will not incur if the case remains in Memphis."  (Hoyle Decl., ECF No. 30-1, ¶ 9.)  B.E. also states that "[i]t is reasonable to require companies with the wealth and size of LinkedIn to litigate in jurisdictions in which they regularly conduct business."  (ECF No. 30 at 7.)

The Court has considered "the relative ability of litigants to bear expenses in any particular forum" among the factors in a § 1404(a) case.  Ellipsis, Inc. v. Colorworks, Inc., 329 F. Supp. 2d 962, 970 (W.D. Tenn. 2004).  In the instant case, B.E.'s CEO stated that the company will incur additional expenses, but it has not shown with any specificity how detrimental those expenses would be to the company.  Further, while Hoyle stated that his personal financial status would be adversely affected by litigating in the Northern District of California, he did not state why or how his personal finances would impact B.E., the party to the instant case.  (See Hoyle Decl., ECF No. 30-1, ¶ 9.)  B.E. has shown that LinkedIn has the ability to bear expenses in this forum (see ECF No. 30-3), but the Court does not find this to be a dispositive factor in denying LinkedIn's Motion.  But see Siteworks Solutions, LLC v. Oracle Corp., No. 08-2130-A/P, 2008 WL 4415075, at *4 (W.D.

23

Tenn. Sept. 22, 2008) (finding the relative financial strengths of the parties did not weigh in favor of transferring the case, as the party opposed to transfer showed it "ha[d] no net worth, very little revenue, no gross profits, no assets, and [would have to] borrow from its owners in order to pay the litigation expenses"). The Court finds that the evidence presented is insufficient to make a showing that B.E. or LinkedIn will be adversely affected by litigating in either forum. The paramount consideration remains whether the Northern District of California is more convenient to the parties than B.E.'s chosen forum.

With respect to convenience, the Court finds this factor does not weigh in favor of transfer. While LinkedIn has made a showing that its business would be disrupted by the absence of its proposed witnesses, B.E. has made an equal showing that its business would be disrupted in having to prosecute the instant case in California. LinkedIn has shown that the Northern District of California would be a more convenient forum for it, but it has not shown that the Northern District of California is a more convenient forum for both parties. As a result, the hardship to LinkedIn does not indicate transfer is more convenient.

## C.    Interests of Justice

LinkedIn argues that transfer to the Northern District of California is appropriate based on additional considerations that pertain to the interests-of-justice factor.  (ECF No. 21-1 at 14-15; ECF No. 36 at 8-9.)  These considerations include the "public-interest concerns, such as systemic integrity and fairness," of the proceedings.  See Moore, 446 F.3d at 647 n.1. In the instant case, the Court will consider the relative trial efficiency of the transferee and transferor districts and the localized interest in the litigation.

### 1.    Trial Efficiency

LinkedIn argues that while the Western District of Tennessee has a shorter median time from filing to trial, "the median time from filing to final disposition of cases in the Western District of Tennessee is longer than in the Northern District of [California]."  (ECF No. 36 at 9.)  LinkedIn admits, however, that in general this factor is neutral.  (Id.)

B.E. argues that transfer to the Northern District of California "would likely delay trial of this case by at least one year."  (ECF No. 30 at 15.)  B.E. cites the 2011 Federal Court Management Statistics for both districts to illustrate that the median time from filing to trial in the Northern District of California was 35.4 months, while the median time

from filing to trial in the Western District of Tennessee was 20.8 months.  (Id. (citing ECF No. 30-4).)

The Court agrees with LinkedIn and finds this factor neutral to its determination of whether the Northern District of California is the more convenient forum.

## 2. Local Interest

LinkedIn argues that the Northern District of California has strong local ties to the instant case because LinkedIn is located there, its employees are located there, the sources of proof are located there, and the alleged infringement took place there.  (ECF No. 21-1 at 15.)  LinkedIn also asserts that B.E.'s ties to the Western District of Tennessee should be discounted because it manufactured those ties in anticipation of litigation.  (Id.)  LinkedIn also argues that the Northern District of California has a "strong local interest in adjudicating claims calling into question the activities of companies and employees who, like LinkedIn and its employees, reside in the District."  (Id. (citing In re Hoffman-LaRoche, Inc., 587 F.3d 1333, 1336 (Fed. Cir. 2009)).)

B.E. argues that the Western District of Tennessee has a substantial local interest in the instant case because the holder of the patent-in-suit is located in this District and because LinkedIn has allegedly infringed the patent in this District.  (ECF No. 30 at 15-16.)  B.E. also asserts that its

26

ties to Tennessee are not "recent, ephemeral, or manufactured for the purposes of litigation." (Id. at 15)  Hoyle stated that he has resided in the Western District of Tennessee since 2006, that Memphis is B.E's principal place of business, and that the sources of proof pertinent to the instant case are located in the District.  (Hoyle Decl., ECF No. 30-1, ¶¶ 2-4, 7-8.)

The Court finds that this factor does not weigh in favor of transfer.  While LinkedIn has strong local ties to the Northern District of California, the Court finds that B.E.'s connection to the Western District of Tennessee was not manufactured for the purposes of litigation.  B.E.'s founder and CEO, who is also the holder of the patent-in-suit, has resided in the District for seven years.  B.E.'s connections, therefore, are neither "recent" nor "ephemeral."  As a result, LinkedIn has not demonstrated that the Northern District of California's local interest outweighs that of the Western District of Tennessee.

IV. **CONCLUSION**

For the foregoing reasons, the Court finds that, in balancing the statutory factors, LinkedIn has not demonstrated that the Northern District of California is a more convenient forum than the Western District of Tennessee.  Therefore, LinkedIn's Motion to Transfer Venue is DENIED.

Accordingly, the Court hereby LIFTS the February 12, 2013, stay of all proceedings.  (ECF No. 38.)  Regarding Plaintiff's

Motion to Dismiss and Motion to Strike, filed January 25, 2013 (ECF No. 33), Defendant shall have thirteen (13) days from the date of entry of this Order, up to and including August 1, 2013, to file its Response.

　　　　**IT IS SO ORDERED** this 19th day of July, 2013.


　　　　　　　　　　　　　　　　s/ Jon P. McCalla_____
　　　　　　　　　　　　　　　　CHIEF U.S. DISTRICT JUDGE